**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Ronald Mowery, | : | Case No. 5:09-CV-2835 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM DECISION AND ORDER** |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act) and for Supplemental Security Income (SSI) under Title XVI of the Act. Pending are the parties' Briefs on the Merits (Docket Nos. 14 & 19). For the reasons that follow, this case is remanded to the Commissioner pursuant to sentence four of 42 U. S. C. § 405(g).

**I. PROCEDURAL BACKGROUND.**

On April 26, 2006, Plaintiff filed applications for DIB and SSI alleging that he became disabled on June 15, 2005 (Docket No. 10, Exhibit 7, pp. 2-9 of 32). Plaintiff's requests were denied initially and upon reconsideration (Docket No. 10, Exhibit 4, pp. 2-4, 5-7, 14-16, 18-20, 21-22 of 28). Plaintiff filed

a request for hearing and on September 8, 2008, Administrative Law Judge (ALJ) John D. McNamee-Alemany held a hearing at which Plaintiff, represented by counsel, and Vocational Expert (VE) Macey attended and testified (Docket No. 10, Exhibit 2, p. 24 of 38). On November 7, 2008, ALJ McNamee-Alemany rendered an unfavorable decision, finding that Plaintiff was not disabled under the Act (Docket No. 10, Exhibit 2, pp. 13-22 of 38). On October 8, 2009, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner (Docket No. 10, Exhibit 2, p. 2-4 of 38). Plaintiff filed a timely Complaint in this Court seeking judicial review (Docket No. 1).

## II. FACTUAL BACKGROUND.

A.   **PLAINTIFF'S TESTIMONY**.

Plaintiff was a veteran of the United States Army; however, he was not receiving VA benefits. He was thirty nine years of age and had completed one year of college. Plaintiff resided with his parents and compensated them for rent with his welfare benefits. His food stamps provided funds for one trip to the grocery store. Plaintiff claimed that he had been sober for approximately four years (Docket No. 10, Exhibit 2, pp. 28, 30, 34 of 38).

Plaintiff was diagnosed with the human immunodeficiency virus (HIV). The symptoms were fairly stable; however, he continued to suffer from fatigue, uncontrolled diarrhea and depression (Docket No. 10, Exhibit 2, pp. 30-31 of 38). Plaintiff was undergoing ongoing therapy to monitor the severity of his viral infection. He was also undergoing counseling to address symptoms of depression. The symptoms of depression were more pronounced during the winter season and "cold spells of spring and fall." During those times, Plaintiff was unmotivated to do anything. Plaintiff recounted that during the recent rainstorm he had actually stayed in bed and/or retreated to the couch and watched television all day (Docket No. 10, Exhibit 2, pp. 29, 31 of 38).

Plaintiff generally refrained from talking to people or engaging in conflict (Docket No. 10, Exhibit 2, pp. 29-30 of 38). Plaintiff did "fiddle" around the yard; however, he became easily fatigued before the expiration of an hour. Plaintiff drove to counseling sessions (Docket No. 10, Exhibit 2, pp. 30, 31 of 38).

Plaintiff had an employment history of managing a fast food restaurant and last worked about June 2004. He doubted that he could return to this work as it was too demanding and fast paced. While in the Army, Plaintiff did masonry, carpentry and masonry specialist work. Plaintiff had been unsuccessful in obtaining employment, having submitted about 25-30 applications for employment as an information clerk taking applications, working computers and answering phones (Docket No. 10, Exhibit 2, pp. 28-32 of 38).

**B.     VE TESTIMONY**.

The VE testified that his opinions were consistent with THE DICTIONARY OF OCCUPATIONAL TITLES (DOT) and the numbers of jobs were from the Department of Labor Bureau of the Census figures (Docket No. 10, Exhibit 2, p. 37 of 38).

In the first hypothetical question posed to the VE, the ALJ assumed a hypothetical younger person with a high school education and transferable skills who could perform a full range of light work and who could occasionally climb ramps or stairs, frequently balance, stoop, kneel and crouch, never climb using ladders or scaffolds and never work in an environment of intense production stresses. The jobs in the national or regional economies that such hypothetical person could perform, included a bench assembler, a cashier, and a final assembler. There were approximately 1,000 bench assembler positions in Northeast Ohio and approximately 195,000 bench assembler positions nationally. There were approximately 2,000 cashier positions in Northeast Ohio and approximately 320,000 cashier positions

nationally. There were approximately 700 final assembler jobs in Northeast Ohio and approximately 100,000 final assembler jobs nationally (Docket No. 10, Exhibit 2, p. 36 of 38). If the appropriate employment was in an office environment, the hypothetical plaintiff could perform work as a mail clerk. In Northeast Ohio, there were approximately 1,100 mail clerk jobs and approximately 190,000 mail clerk jobs nationally.

Counsel proffered another hypothetical plaintiff who could not work around hazards, heights, moving machinery or knives, should be restricted to simple, routine work with minimal superficial contact with supervisors, co-workers and the public, could leave the work site at will and could be off task 15% of the time. The VE explained that being off task over a period of time would be unacceptable in a competitive situation. Without special accommodations, there would be no jobs available for such a plaintiff (Docket No. 10, Exhibit 2, pp. 37-38 of 38).

### III. MEDICAL EVIDENCE.

Plaintiff was treated on July 1, 2005, at St. Joseph's Hospital for depression which was related to a history of drug and alcohol abuse, the presence of the HIV and the inability to tell his family that he was HIV positive (Docket No. 10, Exhibit 10, p. 17 of 20). On July 12, 2005, Plaintiff's viral load, measured through an assay of routine blood and urine tests, showed an abnormal white blood count and an abnormal monocyte level (Docket No. 10, Exhibit 11, p. 9 of 13; Exhibit 13, p. 8 of 30). From the blood samples collected on July 27, 2005, Plaintiff tested positive for Hepatitis B and negative for Hepatitis C (Docket No. 10, Exhibit 11, p. 6 of 13).

Plaintiff presented to the Emergency Room at University Hospital in Cleveland, Ohio, on August 30, 2005, with a fever, shaking chills and excessive sweating (Docket No. 10, Exhibit 12, p. 6 of 26; Exhibit 21, p. 11 of 21). He was admitted to the hospital because of the rapid progression of "the

4

disease" (Docket No. 10, Exhibit 12, p. 14 of 26). The magnetic resonance imaging (MRI) of Plaintiff's brain was unremarkable. There was no evidence of acute cardiopulmonary process (Docket No. 10, Exhibit 12, pp. 18-24 of 26).

On September 2, 2005, Plaintiff presented to the University Hospital with excessive sweating and fever. The MRI of Plaintiff's head was normal but the computed tomography (CT) scan of Plaintiff's head showed abnormal enhancement of the frontal and temporal lobes. The high resolution CT scan of Plaintiff's chest showed normal results (Docket No. 10, Exhibit 21, pp. 4-6 of 21).

Dr. Robert A. Salata, M. D., an infectious disease specialist, addressed HIV related symptoms which included reduced platelets in Plaintiff's blood (Docket No. 10, Exhibit 14, p. 18 of 21). Overall, Dr. Salata noted that Plaintiff gained weight, he had five to seven bowel movements daily and he was persistently weak. As a result of his symptoms, Plaintiff had a decreased interest in social activities (Docket No. 10, Exhibit 14, pp. 4-5 of 21).

Dr. Salata recorded and compared Plaintiff's weight, noting that from October 10 to December 12, 2005, Plaintiff gained eight pounds, from December 12, 2005, to May 8, 2006, Plaintiff gained five and one half pounds and from May 8 to September 11, 2006, Plaintiff lost ten and a half pounds. Plaintiff had chronic diarrhea and he was persistently weak. With medication, Plaintiff's condition was stable (Docket No. 10, Exhibit 17, pp. 4, 5 of 24). In fact, on June 12, 2006, Dr. Salata opined that Plaintiff was doing well from an HIV standpoint (Docket No. 10, Exhibit 14, p. 21 of 21).

In the meantime, on April 22, 2006, Plaintiff presented to the Lake Hospital System Emergency Room with complaints of abdominal pain and cold symptoms that had persisted for a week. The acute abdominal series of the chest showed no abnormalities of the heart, lungs or mediastinum or bony thorax. Results from the digital imaging of Plaintiff's abdomen and chest were negative (Docket No.

5

10, Exhibit 23, pp. 15, 18 of 19).

On May 30, 2006, cells or tissues were removed from Plaintiff's colon. The results showed the presence of a polyp (Docket No. 10, Exhibit 18, p. 30 of 42).

On June 22, 2006, Plaintiff presented to University Hospital with pain. Upon physical examination, Plaintiff was diagnosed and treated for bronchitis. The three views of the thoracic vertebrae showed normal results. The three views of the lumbar vertebrae also showed normal results (Docket No. 10, Exhibit 23, pp. 8, 11, 13 of 19).

From September 13, 2005 through September 11, 2006, Plaintiff's symptoms were monitored at Pathways, an outpatient mental health facility. Dr. Thomas J. Svete, M. D., conducted the initial diagnostic interview. His impression was that Plaintiff had a schizoaffective disorder, an antisocial personality disorder, AIDS, migraine headaches, a history of hepatitis, moderate to severe stressors and some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (Docket No. 10, Exhibit 16, p. 21 of 21).

Plaintiff started sleeping better in November 2005 but he was still paranoid (Docket No. 10, Exhibit 16, p. 16 of 21). On January 9, 2006, Plaintiff was doing well with the prescribed medication; however, a side effect of the medication was weight gain (Docket No. 10, Exhibit 16, p. 15 of 21). Plaintiff complained of lethargy on April 11 and May 10, 2006. The results from a routine chemical analysis administered on hematic samples collected on May 8, 2006 showed elevated triglycerides (Docket No. 10, Exhibit 24, p. 11 of 30).

Plaintiff reported a loss of five pounds during the consultation with Dr. Svete on May 10, 2006 (Docket No. 10, Exhibit 16, pp. 9, 11 of 21). Also on May 10, 2006, Plaintiff presented to Pathways for psychiatric treatment of symptoms related to depression. He was prescribed an antidepressant (Docket

No. 10, Exhibit 24, pp. 23, 24 of 30). By July 5, 2006, Plaintiff was feeling much better. He had lost twenty pounds and this made him happy (Docket No. 10, Exhibit 24, p. 21 of 30).

On September 6, 2006, Plaintiff was very depressed. The treating physician considered increasing the dosage of the antidepressant (Docket No. 10, Exhibit 24, pp. 19, 20 of 30). On October 18, 2006, Plaintiff reported that his depression was starting to "boost." His medication was adjusted and he was strongly encouraged to exercise and undergo individual counseling (Docket No. 10, Exhibit 24, pp. 17, 18 of 30).

On December 11, 2006, Plaintiff was "dragging" and sleeping more. He was not motivated to do anything. A Pathway physician prescribed a different antidepressant that had a risk of recurrence of paranoid ideations (Docket No. 10, Exhibit 25, pp. 3, 4 of 42).

On August 7, 2006, Dr. Caroline Lewin, Ph. D., a psychiatric consultant, conducted a medical review of Plaintiff's mental health and determined that Plaintiff had depressive, borderline personality and schizoaffective disorders along with a history of substance addiction disorder (Docket No. 10, Exhibit 15, pp. 16, 20, 21 of 38). Dr. Lewin opined that Plaintiff had mild restriction in activities of daily living or difficulty in maintaining concentration, persistence or pace. Plaintiff had moderate difficulties in maintaining social functioning, maintaining attention and concentration for extended periods of time and working in coordination with or proximity to others. He was not significantly limited in the ability to understand, remember and carry out detailed instructions, perform activities within a schedule, maintain regular attendance and punctuality and make simple work-related decisions: (Docket No. 10, Exhibit 15, pp. 27 of 29).

Dr. Lewin's conclusions were based on an opinion that Plaintiff's use of drugs exacerbated his symptoms. Since starting treatment and medication, Plaintiff had shown improvement (Docket No. 10,

7

Exhibit 15, p. 29 of 38).

On August 8, 2006, Dr. Kamala Saxena, M. D., concluded that Plaintiff could:

1. occasionally lift and /or carry fifty pounds and occasionally climb using ramps/stairs.
2. frequently lift and/or carry twenty-five pounds and frequently balance, stoop, kneel, crouch and crawl.
3. stand and/or walk about six hours in an eight-hour workday.
4. sit for a total of about six hours in an eight-hour workday.
5. push and/or pull on an unlimited basis.
6. never climb using a ladder/rope/scaffolds.

(Docket No. 10, Exhibit 15, p. 32-33 of 38).

There were no manipulative, visual, communicative or environmental limitations established (Docket No. 10, Exhibit 15, p. 34-35 of 38).

On October 30, 2006, Dr. Salata reported that from October 10 to December 12, 2005, Plaintiff gained five pounds; from December 5, 2005 to May 9, 2005, Plaintiff gained five and one half pounds; from May 8, 2005 to June 12, 2006, Plaintiff gained five and a half pounds and from June 12 to September 11, 2006, he lost five pounds. He noted that the chronic diarrhea had persisted since March 2006 (Docket No. 10, Exhibit 24, p. 4 of 30).

On December 12, 2006, Dr. Svete rated as poor, Plaintiff's ability to:

1. respond appropriately to changes in routine settings,
2. deal with the public,
3. relate to co-workers,
4. interact with supervisors,
5. work in coordination with or proximity to others without being unduly distracted,
6. deal with work stresses,
7. compete a normal workday and work week without interruptions from psychologically based symptoms,
8. behave in an emotionally stable manner and
9. relate predictably in social situations.

He rated as fair Plaintiff's ability to maintain his appearance. Dr. Svete reaffirmed these findings on January 24, 2007 (Docket No. 10, Exhibit 25, pp. 9-10 of 42).

8

On March 8, 2007, Plaintiff was doing well on the regimen of medication which included Risperdal©, a medication prescribed to treat the symptoms of schizophrenia, and Lexapro©, an antidepressant. He was even tolerating the side effects well. There was no evidence of a movement disorder or worsening of metabolic parameters (Docket No. 10, Exhibit 25, p. 40 of 42).

On August 27, 2007, Plaintiff's cholesterol and triglyceride levels were elevated. His glucose and platelet levels were low (Docket No. 10, Exhibit 25, pp. 24, 25, 26 of 42). From the hematic sample collected on December 10, 2007, Plaintiff's platelet count was low and his mean platelet volume was high (Docket No. 10, Exhibit 25, p. 21 of 42).

On December 14, 2007, personnel at Western Reserve Counseling Service, a counseling and treatment facility, conducted an initial diagnostic assessment after which Plaintiff was diagnosed with major depression and generalized anxiety disorder. Western Reserve personnel developed an individualized program of counseling and/or psychotherapy (Docket No. 10, Exhibit 27, pp. 22, 26-27 of 41). Two weeks later, Plaintiff commenced psychotherapy with Nikki L. Saulino, a licensed social worker. During the subsequent twelve sessions, Plaintiff discussed, *inter alia*, sexuality, feelings about his mother, social stressors, ensuing medical treatment and symptoms of depression (Docket No. 10, Exhibit 27, pp. 3-17, 35 of 41).

Ms. Saulino determined on January 15, 2008 that Plaintiff had a poor ability to

1. socialize,
2. relate predictably in social situations,
3. understand, remember and carry out complex job instructions,
4. complete a normal workday and work week without interruptions from psychologically based symptoms,
5. deal with work stresses and
6. deal with the public and respond appropriately to changes in routine settings.

(Docket No. 10, Exhibit 25, pp. 12-13 of 42).

9

At Pathways, Plaintiff reported that he was okay on May 16, 2008. Nevertheless, the prescribed dosage of medication designed to treat schizophrenia was increased. The medication prescribed to treat depression was stabilized (Docket No. 10, Exhibit 25, pp. 31, 32 of 42). On June 13, 2008, Plaintiff presented three concerns, namely, his lack of motivation, his inability to exercise willpower and his mother's complaint that he was mean and angry, to Dr. Irene Shulga, M. D. Dr. Shulga adopted the diagnosis of schizoaffective disorder by history and scheduled a follow-up appointment in two weeks (Docket No. 10, Exhibit 26, p. 6 of 6).

### IV. STEPS TO SHOWING ENTITLEMENT TO SOCIAL SECURITY BENEFITS.

DIB and SSI are available only for those who have a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(a), (d); See also 20 C.F.R. § 416.920)). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); See also 20 C.F.R. § 416.905(a) (same definition used in the SSI context)).

The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively. To assist clarity, the remainder of this decision refers only to the DIB regulations, except where otherwise necessary.

To determine disability under Sections 404.1520 and 416.920, a plaintiff must first demonstrate that he or she is not currently engaged in "substantial gainful activity" at the time her or she seeks disability benefits. *Id.* (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)).

Second, plaintiff must show that s/he suffers from a "severe impairment" in order to warrant a finding of disability. *Id.* A "severe impairment" is one which "significantly limits the claimant's physical or mental ability to do basic work activities. *Id.*

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id*.

Fourth, if the plaintiff's impairment does not prevent him/her from doing his/her past relevant work, plaintiff is not disabled. *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent him/her from doing his/her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Id*. (*citing Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (internal citations omitted) (second alteration in original)). If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates. *Id*. (*citing* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).

## V. THE ALJ'S FINDINGS.

Upon consideration of the evidence, the ALJ made the following findings:

1. Plaintiff met the insured status requirements of the Act through December 31, 2010. Plaintiff had not engaged in substantial gainful activity since June 15, 2005, the alleged onset date.

2. Plaintiff had the following severe medical impairments: HIV and depression. However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1.

3. Plaintiff had the RFC for light work with three limitations, specifically, Plaintiff could occasionally climb ramps and stairs but he could never climb ladders or scaffolds. Plaintiff could frequently balance, stoop, kneel and crouch; and Plaintiff should refrain

11

        from performing work activity involving intense production stress such as on an assembly line.

4. Plaintiff was unable to perform any past relevant work.

5. Plaintiff, a younger individual aged 18-49 with at least a high school education, was able to communicate in English.

6. Transferability of job skills was not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that Plaintiff is not disabled.

7. Considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.

8. Plaintiff was not disabled under the Act from June 15, 2005, through the date of this decision or November 7, 2008.

(Docket No. 10, Exhibit 2, pp. 10-22 of 38).

## VI. STANDARD OF REVIEW.

Title 42 U.S.C. § 405(g) permits the district court to conduct judicial review over the final decision of the Commissioner. *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832-833 (6th Cir. 2006). Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Commissioner Social Security Administration*, 402 F.3d 591, 595 (6th Cir. 2005) (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir.2004) (*quoting Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997)).

Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007).

In deciding whether to affirm the Commissioner's decision, it is not necessary that the court agree with the Commissioner's finding, as long as it is substantially supported in the record. *Id.* (*citing Her v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth, supra,* 402 F. 3d at 595 (*citing Warner, supra*, 375 F.3d at 390) (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2478 (1983) (internal quotation marks omitted)). If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Id.* (*citing Warner,* 375 F.3d at 390) (*quoting Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)).

## VII. DISCUSSION.

Plaintiff argues that:

1. The ALJ improperly rejected the opinion of Plaintiff's treating sources.

2. The ALJ improperly considered the symptoms of Plaintiff's impairments.

3. The answers to the hypothetical questions posed to the VE do not constitute substantial evidence as they did not accurately portray Plaintiff's impairments.

Defendant disputes Plaintiff's arguments.

**1. TREATING SOURCES.**

Plaintiff argues that the ALJ improperly considered the opinions of Dr. Svete, his treating psychiatrist and Ms. Sauline, his counselor. Alternately, the ALJ failed to provide reasons for rejecting

13

these opinions.

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances. *Cross v. Commissioner of Social Security*, 373 F. Supp.2d 724, 729 -730 (N. D. Ohio 2005). Generally, more weight is attributed to treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2)). If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight. *Id.* (*citing* 20 C. F. R. § 404. 1527(d)(2)).

The Sixth Circuit notes that the treating source rule in the regulations emphasizes a "good reason requirement", specifically, the agency must "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination. *Id.* (*citing Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). To meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.
- Identify evidence supporting such finding.
- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.

*Id.* (*citing Wilson, supra,* at 546).

Failure to articulate good reasons for discounting the treating source's opinion is not harmless

14

error. *Id*. (*citing Wilson, supra*, at 546). Drawing a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business, the former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error. *Id.* (*citing Wilson, supra,* at 546). Articulating good reasons for not giving controlling weight to a treating physician's opinion creates a substantial right exempt from the harmless error rule. *Id.* (*citing Wilson, supra*, at 546).

The ALJ found that Plaintiff suffered from severe depression. Yet there is no indication that the ALJ considered the treating source opinions that provided a detailed picture of Plaintiff's mental health over a relatively substantial period of time. Even if Plaintiff's condition improved under their care, the ALJ's failure to consider whether they were treating sources, explain whether their opinions were entitled to controlling weight or, alternately, give good reasons for discounting their opinions, does not comply with the procedural requirements of the Act. On remand, the ALJ must consider whether Dr. Svete and Ms. Saulino are treating sources, the weight, if any, to be given their opinions and consider the treatment given their opinions in the context of a disability determination.

**2. DEBILITATING SYMPTOMS**

Plaintiff contends that fatigue and chronic diarrhea are symptoms of his impairment. The ALJ erred in failing to consider Dr. Salata's suggestion that these symptoms significantly limit his physical and mental ability to engage in work activities.

In determining the extent to which symptoms affect the claimant's capacity to perform basic work activities, consideration will be given to all of the available evidence, including, the claimant's statements about the intensity, persistence, and limiting effects of the symptoms and the claimant's statements in relation to the objective medical evidence and other evidence, in reaching a conclusion

as to whether the claimant is disabled.  *Elliott v. Commissioner of Social Security*, 2011 WL 400101, *10 (N. D. Ohio 2011) *aff'd* 2011 WL 441518 (N. D. Ohio 2011) (*citing* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).  The fact finder will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between the claimant's statements and the rest of the evidence, including the claimant's history, the signs and laboratory findings, and statements by the treating or non-treating source or other persons about how these symptoms affect the claimant.  *Id.* (*citing* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).  The claimant's symptoms will be determined to diminish the claimant's capacity for basic work activities to the extent that he or she alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.  *Id.* (*citing* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).

In the instant case, the ALJ did consider Dr. Salata's analysis of Plaintiff's symptoms and the extent to which the symptoms can be reasonably accepted as consistent with objective medical evidence.  The ALJ asserts that he examined the intensity, persistence and limiting effects of the symptoms.  In particular, the ALJ included that fatigue was a byproduct of the HIV.  He further adopted Dr. Salata's conclusion that diarrhea was a side effect of the medication taken to prevent illness and infection (Docket No. 10, Exhibit 2, pp. 17-18 of 38).  The analysis and findings of the symptoms indicated that the ALJ did regard, as conclusive, Dr. Salata's opinions regarding symptoms of fatigue and diarrhea.

**3.**     **HYPOTHETICAL QUESTIONS**.

Plaintiff contends that the VE's responses to the hypothetical question cannot constitute substantial evidence as the responses fail to consider the opinions of Dr. Svete that Plaintiff was limited

16

in his ability to concentrate, focus and he would be off task 15% of the day.

In order for a VE's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments. *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010) (*see Howard v. Commissioner of Social Security*, 276 F.3d 235, 239, 241 (6th Cir. 2002); *see also Webb v. Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004) (though an ALJ need not list a claimant's medical conditions, the hypothetical should provide the vocational expert with ALJ's assessment of what the claimant "can and cannot do.")).

In order for a VE's testimony in response to a hypothetical question to be substantial evidence in support of an ALJ's opinion denying benefits, the question must accurately encompass a claimant's mental limitations. *Surma v. Commissioner of Social Security*, 2010 WL 3001908, *4 (N. D. Ohio 2010) (*citing Webb, supra*, 368 F.3d at 633) (holding that enumerated medical ailments are unnecessary in a hypothetical posed to a VE). The only limitations that need to be included however, are the ones that the ALJ finds "credible." *Id.* (*See Infantado v. Astrue,* 263 Fed. Appx. 469, 477 (6th Cir. 2008) (*citing Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

The Magistrate finds that Plaintiff has failed to accurately assess the consequences of his mental impairments by suggesting that Dr. Svete found that Plaintiff could not concentrate, focus or stay on task. Upon review of the medical notes, the magistrate notes on one occasion that Dr. Svete memorialized Plaintiff's complaint that he could not concentrate during a period of increased paranoia. Dr. Svete concluded that although Plaintiff's ability to concentrate was not precluded, Plaintiff's ability to maintain attention and concentration for extended periods of two hours was a serious limitation. Dr. Svete did not opine or even suggest that Plaintiff's impairments would result in being off task 15% of

17

the day.

Plaintiff's allegations that he cannot concentrate, focus or stay on task do not accurately portray his functional limitations. Moreover, there was no evidence which would compel the ALJ to find that Plaintiff's allegations that he cannot concentrate, focus or stay on task were credible. Since the evidence can be construed to support the ALJ's decision to exclude allegations of Plaintiff's inability to focus, concentrate or stay on task from the hypothetical question posed to the VE, the Magistrate will defer to that decision.

### VIII. CONCLUSION

For the foregoing reasons, this case is remanded to the Commissioner pursuant to sentence four of 42 U. S. C. § 405(g), to (1) ascertain whether Dr. Svete and Ms. Saulino are treating sources, (2) articulate the weight to be attributed to their opinions or alternately give good reasons for discounting their opinions and (3) re-consider the sequential evaluation based upon the supplemental findings and analysis.

**IT IS SO ORDERED.**

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Date: March 16, 2011